**UNITED STATES DISTRICT COURT**
**FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VICTORIA RIDGEWAY, | ) |
| | ) |
| Plaintiff | ) **Case No.:** |
| | ) |
| v. | ) **COMPLAINT AND DEMAND FOR** |
| | ) **JURY TRIAL** |
| NCO FINANCIAL SYSTEMS, INC., | ) |
| | ) **(Unlawful Debt Collection Practices)** |
| Defendant | ) |
| | ) |

## COMPLAINT

VICTORIA RIDGEWAY ("Plaintiff"), by her attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against NCO FINANCIAL SYSTEMS, INC. ("Defendant"):

## INTRODUCTION

1.      Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

2.      Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," and 28 U.S.C. § 1331 grants this court original jurisdiction of all civil actions arising under the laws of the United States.

3.      Defendant conducts business and has an office in the Commonwealth of Pennsylvania and therefore, personal jurisdiction is established.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

5.      Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

6.      Plaintiff is a natural person residing in Bensenville, Illinois, 60106.

7.      Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

8.      Defendant is a national debt collection company with corporate headquarters located at 507 Prudential Road in Horsham, Pennsylvania, 19044.

9.      Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and repeatedly contacted Plaintiff in an attempt to collect a debt.

10.     Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## PRELIMINARY STATEMENT

11.     The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 et seq. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

PLAINTIFF'S COMPLAINT

12.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

13.     In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692b.

14.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

PLAINTIFF'S COMPLAINT

## FACTUAL ALLEGATIONS

15.     At all relevant times, Defendant was attempting to collect an alleged consumer debt from Plaintiff.

16.     The alleged debt at issue arose out of transactions, which were primarily for personal, family, or household purposes.

17.     Beginning in or around January 2011 and continuing until March 2011, Defendant, its agents, employees, and servants, engaged in debt collection activities seeking payment from Plaintiff.

18.     Defendant, its employees and servants harassed Plaintiff by making continuous calls to her home telephone number and work telephone number.

19.     On or around January 27, 2011, Defendant sent Plaintiff a letter seeking and demanding payment of $34,954.38.

20.     On January 28, 2011, Plaintiff called Defendant and spoke with a representative who identified himself as "Phillip Eick."

21.     Plaintiff asked Mr. Eick if he could provide her with any information regarding the alleged debt as Plaintiff was concerned with how high it was.

22.     Mr. Eick, informed Plaintiff that the debt was originally with MBNA for around $7,000.00, but due to interest and fees the debt was now $34,954.38.

23.     Plaintiff and Mr. Eick proceeded to discuss settlement options, and agreed to a settlement whereby Plaintiff would pay $3,500, which would include roughly $3,000 from Plaintiff's tax return and $500 from money she intended to borrow.

24.     Mr. Eick told Plaintiff that if she paid the agreed amount of $3,500.00 the debt

- 4 -

1  would be considered settled.

2      25.    The conversation ended with Plaintiff under the belief that the alleged debt
3  was settled for a $3,500.00 lump sum payment.

4      26.    Within minutes of ending her conversation with Mr. Eick, Plaintiff was contacted
5  by Defendant and informed that she needed to get signed papers regarding the $500.00 loan
6  within ten (10) minutes or the settlement deal was off.

7      27.    Thereafter, telephone calls continued every ten (10) minutes from Defendant for
8  the remainder of the day, demanding that Plaintiff get signed papers regarding the loan that day.
9
10      28.    Plaintiff was unable to meet this unreasonable demand by Defendant.

11      29.    On February 9, 2011, a representative for Defendant identified as "Curtis" called
12  Plaintiff and informed her that the "postdated" check she authorized to deposit came back "non-
13  sufficient funds."

14      30.    Plaintiff informed Curtis that she never authorized a postdated check, nor had she
15  sent in any check to Defendant.

16      31.    Curtis transferred Plaintiff to an individual identified as "Rob Cummings," who
17  informed Plaintiff that the prior settlement agreement was now void and Plaintiff now owed
18  over $35,000.00.
19
20      32.    Plaintiff told Mr. Cummings that she would not pay any money toward the
21  alleged debt without speaking to an attorney first.

22      33.    Mr. Cummings threatened legal action against Plantiff, indicating that a judge
23  will say she owed the debt.

24      34.    Several days later, Plaintiff received a letter from Defendant dated February 8,
25  2011, informing her that a check she had presented to Defendant had been returned by her bank

- 5 -

PLAINTIFF'S COMPLAINT

1    and demanded payment in full of $35,090.74. A true and correct copy of the February 8, 2011

2    letter is attached hereto as Exhibit "A".

3    35.    This letter confused Plaintiff, as she had never sent any checks or authorized any

4    payment to Defendant.

5    36.    Plaintiff received harassing telephone calls and voice messages from Defendant

6    on a number of occasions including but not limited to, January 11, 2011 at 7:50 a.m.; January

7    27, 2011; January 31, 2011 at 1:00 p.m.; February 7, 2011 at 8:24 a.m., 11:10 a.m.; 6:18 p.m.;

8    7:26 p.m., and 8:06 p.m.; February 8, 2011 at 11:40 a.m., 6:30 p.m. and 7:10 p.m.; and February

9    9, 2011 at 3:05 p.m. from the following phone numbers (918) 878-2625 and (877) 363-0954.

10   The undersigned has confirmed that these numbers belong to Defendant.

11   37.    Defendant placed repeated calls to Plaintiff's cellular phone almost every day,

12   causing Plaintiff to receive, at times, more than two (2) collection calls a day and at times, more

13   than four  (4) collection calls a day.

14   38.    Defendant placed repeated calls to Plaintiff's cellular phone almost every day,

15   causing Plaintiff to receive, at times, more than ten (10) collection calls a week and at times,

16   more than twenty (20) collection calls a month.

17   39.    On at least one occasion, Defendant contacted Plaintiff before 8:00 o'clock in the

18   morning, specifically on January 11, 2011 at 7:50 a.m.

19   40.    Defendant has informed Plaintiff that the alleged debt would be reported on her

20   credit report if payment was not made.

21   41.    Defendant's actions in attempting to collect the alleged debt were harassing,

22   abusive and highly deceptive.

- 6 -

**CONSTRUCTION OF APPLICABLE LAW**

42.     The FDCPA is a strict liability statute. <u>Taylor v. Perrin, Landry, deLaunay & Durand</u>, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." <u>Russell v. Equifax A.R.S.</u>, 74 F. 3d 30 (2d Cir. 1996); <u>see also Gearing v. Check Brokerage Corp.</u>, 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); <u>Clomon v. Jackson</u>, 988 F. 2d 1314 (2d Cir. 1993).

43.     The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. <u>Sprinkle v. SB&C Ltd.</u>, 472 F. Supp. 2d 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. <u>Clark v. Capital Credit & Collection Services, Inc.</u>, 460 F. 3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer." <u>Johnson v. Riddle</u>, 305 F. 3d 1107 (10th Cir. 2002).

44.     The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard. <u>See Jeter v. Credit Bureau, Inc.</u>, 760 F.2d 1168 (11th Cir. 1985); <u>Graziano v. Harrison</u>, 950 F. 2d 107 (3rd Cir. 1991); <u>Swanson v. Southern Oregon Credit Service, Inc.</u>, 869 F.2d 1222 (9th Cir. 1988). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." <u>Id.</u> The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive collection

- 7 -

practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. Clomon, 988 F. 2d at 1318.

# COUNT I

## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

45.   In its actions to collect a disputed debt, Defendant violated the FDCPA in one or more of the following ways:

a.   Defendant violated the FDCPA generally;

b.   Defendant violated § 1692c(a)(1) of the FDCPA when it contacted the Plaintiff at an unusual time or place or a time and place known or should be known to be inconvenient to the Plaintiff in connection with the collection of a debt; specifically in the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;

c.   Defendant violated § 1692d of the FDCPA by harassing Plaintiff in connection with the collection of an alleged debt;

d.   Defendant violated § 1692d(5) of the FDCPA, when it caused the Plaintiff's telephone to ring repeatedly or continuously with the intent to harass, annoy or abuse Plaintiff;

e.   Defendant violated § 1692e of the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt;

- 8 -

f.   Defendant violated § 1692e(5) of the FDCPA by threatening to take action that cannot legally be taken or that is not intended to be taken;

g.   Defendant violated § 1692e(10) of the FDCPA by using false representations or deceptive means to collect or attempt to collect a debt;

h.   Defendant violated § 1692f of the FDCPA by using unfair and unconscionable means with Plaintiff to collect or attempt to collect a debt;

i.   Defendant acted in an otherwise deceptive, unfair and unconscionable manner and failed to comply with the FDCPA.

WHEREFORE, Plaintiff, VICTORIA RIDGEWAY, respectfully prays for a judgment as follows:

a.   All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

b.   Statutory damages of $1,000.00 for the violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to 15 U.S.C. § 1693k(a)(3); and

d.   Any other relief deemed appropriate by this Honorable Court.

**DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, VICTORIA RIDGEWAY, demands a jury trial in this case.

PLAINTIFF'S COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RESPECTFULLY SUBMITTED,

DATED: 06/24/11                         KIMMEL & SILVERMAN, P.C.

By: _____

Amy L. Bennecoff
Attorney ID # 202745
Kimmel & Silverman, P.C.
30 E. Butler Pike
Ambler, PA 19002
Phone: (215) 540-8888
Fax: (877) 788-2864
Email: abennecoff@creditlaw.com

PLAINTIFF'S COMPLAINT